THREE HUNDRED AND FIFTY-SEVEN BALES OF COTTON (MATTINGLY v.). See Case No. 9,294.

THREE HUNDRED AND FORTY PIGS OF COPPER (BEARSE v.). See Case No. 1,-193.

THREE HUNDRED AND NINETY-SIX BARRELS DISTILLED SPIRITS (UNITED STATES v.). See Cases Nos. 16,502–16,504.

---

## Case No. 14,011.

### THREE HUNDRED AND NINETY-THREE TONS OF GUANO.

[6 Ben. 533.] 1

District Court, S. D. New York. May, 1873.

CHARTER-PARTY—DEMURRAGE—MASTER'S REFUSAL TO SIGN BILLS OF LADING.

1. The owners of a vessel filed a libel against a cargo of guano, which had been brought in her, from Surrano Cay to New York, under a charter-party, to recover for demurrage in loading her and in discharging, and to recover passage money, agreed in the charter to be paid by the charterer. Detention of the vessel in loading beyond the specified time was admitted, but the charterer claimed that it was caused by the master of the vessel, in that he, without cause, when she was partly loaded, changed the place of anchorage of the vessel to a greater distance from the spot where her cargo of guano was being loaded. On the arrival of the vessel in New York, the master refused, for several days, to sign bills of lading for the cargo, because the charterer would not admit the claim for demurrage in loading. The charterer also refused to pay the passage money, on the ground that the fare was so bad as to constitute a breach of the contract: Held, that, on the evidence, the master was entitled to the presumption that he knew best where his vessel should anchor, and that his moving of his vessel was not, therefore, a defence to the claim for demurrage in loading.

[2. Cited in Johanssen v. The Eloina, 4 Fed. 575, as a case in which demurrage was allowed without interest.]

3. The master was not justified in refusing to sign the bills of lading, and the owners could not, therefore, claim demurrage during the time of such refusal.

4. On the evidence, the fare was sufficient to entitle the owners to the passage money.

In admiralty.

Beebe, Donohue & Cooke, for libellants.

Kobbe & Fowler, for claimant.

BENEDICT, District Judge. The demand in this case is for a balance due to the own-

---

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ers of the bark Nicaragua, upon a charter of her for a voyage from New York to Surrano Cay and back. The balance claimed to be unpaid consists of three items. One item is for a balance of demurrage for detention while loading in Surrano Cay. A detention of four days, unpaid for, is not disputed; but it is insisted that this delay was caused by the wrongful acts of the master, in that, while the vessel was being loaded, he changed her place of anchorage, and, without cause, removed her a quarter of a mile further from the shore, whereby the loading of the guano, which composed the cargo, was retarded for four days.

I cannot find that this defence is supported by sufficient evidence. The master says that he changed his anchorage for the safety of his vessel. No particular place of anchorage was agreed upon in the charter-party; and it cannot be said, upon the proofs, that the vessel was at any time anchored at an unfit place, considering the nature of the harbor. There is no evidence that the object of the removal was to delay the loading, and the master is entitled to the presumption that he best knew where his vessel should anchor. The libellants must, therefore, be held entitled to the four days' demurrage in dispute for detention in Surrano Cay.

Another item of the libellants' demand arises out of a provision in the charter, that the charterer should go as passenger in the cabin, paying one dollar per day as long as he might be on board. To this the defence is, that the fare furnished to the charterer was so wretched and bad, as to constitute a breach of the contract to convey him as a cabin passenger. This defence also fails upon the proofs. The fare, doubtless, was not of the best, but one must not scrutinize too closely the bill of fare of a vessel freighting guano from the Caribbean sea. Upon the evidence, I judge the fare to have been sufficient to entitle the libellant to the dollar a day which the charter-party provides for.

Another part of the libellants' claim arises out of delay in discharging the cargo in New York. It appears by the evidence, that the master refused, in Surrano Cay, to sign a bill of lading for the cargo on board, and again refused after the arrival of the vessel in New York, because the charterer refused to assent to the demurrage charged by the ship in Surrano Cay. Some days were lost in New York in the effort to adjust this claim for demurrage, and it was not until after the 19th of June, which was Saturday, that any bills of lading were delivered to the charterer. During this time it was impossible for the consignee to enter his cargo at the custom house, and obtain a permit to discharge it, because he had been unable to procure a bill of lading. The claim of the master that the demurrage should be agreed to before the bill of lading was signed had no foundation in law. The master was bound to sign the bill of lading, without reference to his claim for demurrage, and so long as he wrongfully withheld from the consignee the bill of lading, which was necessary to enable him to enter the cargo, and to obtain a permit to discharge it, the discharge was prevented by the master of the ship, and for that delay he cannot hold the charterer liable. Monday, the 21st of October, was the first day that the consignee could obtain his permit, owing to the refusal of the master to deliver the bills of lading; and from that time his obligation to receive the cargo must date.

According to this view, the libellants are only entitled to five days' demurrage in New York, instead of the twelve days which they sue for. The libellants are, therefore, entitled to receive $160 for four days' detention in Surrano Cay, $200 for five days' detention in New York, $141 from Mr. Wachschlager, passenger; and he is also entitled to $16 for moving the vessel, and $10 paid for towage, making in all $527.

Let a decree be entered for this amount.

---

THREE HUNDRED AND SEVENTY-TWO PIPES DISTILLED SPIRITS (UNITED STATES v.). See Case No. 16,505.

THREE HUNDRED AND THIRTY-SEVEN CASES OF WINE (UNITED STATES v.). See Case No. 16,506.

THREE HUNDRED BALES OF WOOL (UNITED STATES v.). See Case No. 16,508.

THREE HUNDRED BARRELS OF ALCOHOL (UNITED STATES v.). See Case No. 16,509.

THREE HUNDRED BARRELS OF WHISKEY (UNITED STATES v.). See Case No. 16,510.

THREE HUNDRED CASKS OF JUNIPER CORDIAL (UNITED STATES v.). See Case No. 16,511.

THREE PARCELS OF EMBROIDERY (UNITED STATES v.). See Case No. 16,512.

THREE PUNCHEONS OF RUM. See Case No. 10,548.

THREE RAILROAD CARS (UNITED STATES v.). See Case No. 16,513.

THREE THOUSAND BASKETS OF CHAMPAGNE (UNITED STATES v.). See Case No. 16,514